UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIGSAW PRODUCTIONS, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Defendant. | Case No. 24-cv-2358 (TSC) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF SEC'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................... 1

III. STANDARD OF REVIEW ................................................................................................... 3

IV. ARGUMENT ......................................................................................................................... 4

A. The SEC Properly Withheld the Video Recordings Pursuant to Exemptions 6 and 7(C) Because Disclosure Would Result in an Unwarranted Invasion of Privacy. ........................ 4

    1. Individuals Have a Substantial Privacy Interest in Video Recordings of Their Investigative Testimony. ............................................................................................. 7

    2. Plaintiff Has Not Identified a Relevant Public Interest in Disclosure of the Video Recordings, so the Privacy Interests at Stake Outweigh the Public Interest. .......... 10

B. Disclosure of the Video Recordings Would Result in Foreseeable Harm Within the Ambit of the Exemptions 6 and 7(C), and There Is No Reasonably Segregable Video Information That Can Be Released. ............................................................................................................ 13

V. CONCLUSION .................................................................................................................... 14

I. **INTRODUCTION**

Defendant U.S. Securities and Exchange Commission ("SEC") moves for summary judgment concerning the Freedom of Information Act ("FOIA") request at issue in this litigation—specifically, the portion of Plaintiff's request seeking video recordings of Elon Musk's and Samuel Teller's investigative testimony that correspond with transcripts that have already been released under the FOIA to Plaintiff pursuant to its FOIA request. Summary judgment is appropriate here because there is no genuine dispute of material facts concerning Plaintiff's FOIA request, and the SEC appropriately withheld the video recordings under FOIA Exemptions 6 and 7(C).

Accordingly, based on the attached Declaration of Mark Tallarico and the entire record, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

II. **STATEMENT OF FACTS**[1]

On February 21, 2024, Plaintiff submitted a FOIA request to the SEC for records generated as part of the SEC's investigation into Tesla, Inc. ("Tesla"), as identified by File Number SF-04082-A. SMF ¶ 1. Following administrative proceedings not relevant here, on or about October 12, 2024, Plaintiff agreed to narrow its request to three categories of records:

- Transcripts and exhibits from investigative testimony given by Elon Musk, CEO of Tesla, and Samuel Teller, Tesla's then-chief of staff;

- Video recordings of Musk's and Teller's investigative testimony; and

- Certain third-party communications and records that were previously processed and released by the SEC under the FOIA.

SMF ¶ 2. On October 17, 2024, the SEC produced approximately 1,528 pages of responsive records that had been previously processed and released by the SEC under the FOIA, with

---

[1] The SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment is referred to herein as "SMF."

1

exempt portions withheld.  SMF ¶ 3.  The SEC then focused on processing the transcripts, exhibits, and video recordings.  *Id*.

Musk's and Teller's testimonies were part of an investigation by the SEC's Division of Enforcement that resulted in the SEC bringing public enforcement actions against Tesla and Musk in the United States District Court for the Southern District of New York.  SMF ¶ 4; *see* https://www.sec.gov/newsroom/press-releases/2018-226.  Both cases resulted in publicly available settlement agreements, with neither defendant admitting liability.  SMF ¶ 4.  The Division of Enforcement's investigative work focuses on fraud or other wrongdoing involving potential violations of the federal securities laws.  SMF ¶ 5.

On December 5, 2024, the SEC's Office of FOIA Services ("FOIA Office") provided Plaintiff a partial response regarding the remaining categories of its FOIA request.  SMF ¶ 6.  The FOIA Office stated that it had decided to withhold the video recordings of Musk and Teller in their entirety under FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (7)(C).  *Id*.  On March 18, 2025, the SEC issued a final response to the FOIA request and released to Plaintiff redacted versions of the Musk and Teller transcripts and exhibits.  SMF ¶ 7.[2]

The parties agree that the issue to be resolved through summary judgment is the SEC's withholding of the video recordings that correspond to the released portions of Musk's and Teller's testimony transcripts.  SMF ¶ 9.  Plaintiff is not challenging the SEC's search for documents or any of the withholdings in the released transcripts and exhibits.  *Id*.

---

[2] The transcripts were transcribed by a Certified Shorthand Reporter, and both transcripts were certified by proofreaders who swore and affirmed that the transcripts were "original, complete, true and accurate" after comparing them with the respective video recordings.  SMF ¶ 8.

### III.  STANDARD OF REVIEW

Under the FOIA, federal agencies must make agency records available to the public upon request unless the records fall within one or more statutory exemptions.  5 U.S.C. § 552(a)(3), (b)(1)-(9).  The statute reflects a "balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential," *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003), given the "legitimate governmental and private interests that might be harmed by release of certain types of information," *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (cleaned up).  "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (cleaned up).  The agency bears the burden of justifying its withholdings of materials responsive to a FOIA request, and this Court reviews the agency's response to that request *de novo*.  See 5 U.S.C. § 552(a)(4)(B).

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The defendant in a FOIA case must show . . . that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

A court may award summary judgment in a FOIA action on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information

3

withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  An agency's declarations "receive a presumption of good faith." *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 185 (D.D.C. 2022) (cleaned up).

When addressing a motion for summary judgment, the court "is to strike a balance between adequate review and respecting an agency's expertise and, accordingly, should not overstep the proper limits of the judicial role in FOIA review."  *Dillon v. DOJ*, 444 F. Supp. 3d 67, 83 (D.D.C. 2020) (cleaned up).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Jud. Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (cleaned up).

## IV.   ARGUMENT

### A. The SEC Properly Withheld the Video Recordings Pursuant to Exemptions 6 and 7(C) Because Disclosure Would Result in an Unwarranted Invasion of Privacy.

The SEC properly withheld the video recordings in full under FOIA Exemptions 6 and 7(C) because the release of the video recordings would harm substantial privacy interests that are not outweighed by any meaningful public benefit.

Exemption 6 allows an agency to withhold information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The video recordings at issue here qualify as "similar files" under Exemption 6, since the information is maintained in a government file and relates to particular individuals, Musk and Teller.  *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (Exemption 6 "was intended to cover detailed

Government records on an individual which can be identified as applying to that individual.") (cleaned up).  Once this threshold is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure.  *See Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

Similarly, Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  As a threshold matter, for Exemption 7(C) to apply, the records at issue "must have been compiled for law enforcement purposes."  *Schoenman v. FBI*, 575 F. Supp. 2d 166, 174 (D.D.C. 2008) (cleaned up).  Courts have found that the "law" to be enforced within the meaning of the term "law enforcement purposes" covers both civil and criminal statutes, as well as those statutes authorizing administrative proceedings.  *See, e.g., Vento v. IRS*, 714 F. Supp. 2d 137, 148 (D.D.C. 2010) (holding that distinguishing between civil and criminal enforcement is incorrect because there "is no warrant in the law for that distinction and the federal courts have rejected it"); *Jefferson v. DOJ*, 284 F.3d 172, 178 (D.C. Cir. 2002) (Exemption 7(C) "'covers investigatory files related to enforcement of all kinds of laws,' including those involving 'adjudicative proceedings'").

Here, the investigative testimonies were "compiled for law enforcement purposes" under Exemption 7, because Musk's and Teller's testimonies were part of an SEC enforcement investigation concerning Tesla and Musk prior to the SEC's filing of civil lawsuits, and the Division of Enforcement's investigative work focuses on fraud or other wrongdoing involving potential violations of the federal securities laws.  SMF ¶¶ 4-5; *see also Boyd v. Exec. Off. for U.S. Attys.*, 161 F. Supp. 3d 1, 10 (D.D.C. 2015) (concluding "it is clear" that investigative

5

interviews were "compiled for law enforcement purposes" under Exemption 7(C)); *Cappabianca v. Comm'r., U.S. Customs Serv.*, 847 F. Supp. 1558, 1565 (M.D. Fla. 1994) (stating that records of internal investigation focusing "specifically on alleged acts that could result in civil or criminal sanctions" were compiled for law enforcement purposes). Courts have affirmed the SEC's ability (as a law enforcement agency) to assert Exemption 7 to protect its investigative files. *See, e.g., Robbins Gellar Rudman & Dowd LLP v. SEC*, 419 F. Supp. 3d 523, 531 (E.D.N.Y. 2019) ("the SEC has established the [records] were compiled for law enforcement purposes, namely the investigation into the company's potential violations of federal securities laws").

Like Exemption 6, under Exemption 7(C), courts balance individuals' privacy interests against the public interest in disclosure articulated by the requester. *See DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989). However, as further discussed below, once Exemption 7's threshold is met, courts have consistently held that Exemption 7(C) "is more protective of privacy than Exemption 6." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994); *see Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165–66 (2004). Accordingly, "[w]hen an agency invokes both exemptions, courts focus on Exemption 7(C) because it establishes a lower bar for withholding material." *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) (cleaned up).

Because, as discussed below, the privacy interests at stake in the video recordings far outweigh the potential public interest in disclosure, the SEC's assertions of Exemptions 6 and 7(C) should be upheld.

### 1. Individuals Have a Substantial Privacy Interest in Video Recordings of Their Investigative Testimony.

The video recordings of the investigative testimony at issue here implicate Musk's and Teller's substantial privacy interests, as well as the privacy interests of other individuals present during the testimony, including SEC staff, defense counsel, the Court reporter, and the videographer. As an initial matter, release of information about individuals contained in law enforcement files raises particularly acute threats to personal privacy. *See e.g.*, *Jud. Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (determining that a "distinct" privacy interest was retained in the contents of the subject's investigation files, even though the existence of the investigation was public knowledge). Exemption 7(C) takes those heightened privacy concerns into account by setting a lower bar for the government to withhold information contained in law enforcement files as compared to other types of files. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) ("Exemption 7(C) . . . establishes a lower bar for withholding material."). Specifically, while Exemption 6 allows the government to withhold information contained in other types of files only when disclosure "would constitute a clearly unwarranted invasion of personal privacy," Exemption 7(C) allows for withholding when disclosure "could reasonably be expected" to result in "an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6), (7)(C); *see Favish*, 541 U.S. at 165–66 (noting the "marked contrast" between the language of Exemptions 6 and 7(C), and stating that "Exemption 7(C)'s comparative breadth is no mere accident in drafting" and that "Congress gave special consideration to the language in Exemption 7(C) because it was the result of specific amendments to an existing statute"). In setting this lower threshold for withholding, Exemption 7(C) "recognizes the stigma potentially associated with law enforcement investigations and

7

affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C. Cir. 1981).

The body language, tone, inflection, and pauses captured on video testimony are distinct from the contents of the transcript of the testimony, so Musk's and Teller's privacy interests in the video recordings of their testimony, as well as the privacy interests of other individuals whose voices or images were recorded, meet the threshold for Exemption 7(C)'s heightened protection here. The D.C. Circuit, sitting *en banc*, has recognized the substantial harm to privacy that can result specifically from providing audio recordings, which provide less information about individuals than the video recordings at issue here. *See N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1005–07 (D.C. Cir. 1990). Specifically, the D.C. Circuit found that an audio recording of astronauts aboard the *Challenger* shortly before the space shuttle exploded could be withheld even though the transcript of the recording had already been publicly released, holding that "voice inflections can contain personal information." *Id.* at 1005; *see also id.* at 1004 (noting that "it was the voice inflections, not the words spoken, that [the agency] was seeking to withhold because such inflections are personal to the [individuals on the recording]"). On remand in *NASA*, the district court held that the sound of an individual's voice in an audio recording constituted "intimate details" that the FOIA privacy exemptions were designed to protect and that "this privacy interest is substantial." *N.Y. Times Co. v. NASA*, 782 F. Supp. 628, 631–32 (D.D.C. 1991). The court explained that although "*[w]hat* the [individuals] said may not implicate privacy interests," "*how* the [individuals] said what they did, the very sound of the [individuals'] words, does constitute a privacy interest." *Id.* at 631 (emphasis in original).

The principles discussed in *NASA* are not limited to the tragic circumstances at issue there because personal information is contained in individuals' voices in many other contexts. Thus,

8

courts have applied the reasoning of *NASA* to law enforcement audio recordings where transcripts were disclosed. *See, e.g., Pike v. DOJ*, 306 F. Supp. 3d. 400, 412 (D.D.C. 2016) ("Under binding precedent, written transcripts of recordings do not contain information that is identical to the audio recorded version" (discussing *NASA*)) (emphasis removed).

Video recordings implicate even greater privacy interests than audio recordings, because of the additional personal details found in images, facial expressions, and mannerisms. *See, e.g., Advocs. for Highway & Auto Safety v. Fed. Highway Admin.*, 818 F. Supp. 2d 122, 128–29 (D.D.C. 2011) (noting that individuals had a privacy interest in their videotaped images, because "the video may reveal facial expressions and cues bearing on other mental and physical states"; further explaining, "These sorts of personal details, captured up close and over a prolonged period of time, are not generally available in the ordinary course of daily life.").

In addition, release of videotaped materials can be particularly invasive of personal privacy because videotaped materials are subject to editing and manipulation. *See United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996) (in upholding the district court's decision to keep a video recording of a deposition of President Clinton sealed, the court noted the "potential for misuse of the tape"); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 601 (1978) (in denying access to White House audiotapes, the court noted the concern that there would not be any safeguard "against distortion through cutting, erasing, and splicing of tapes"). The advancements in video, artificial intelligence, and "deep fake" technologies only amplify concerns about manipulation of video recordings. SMF ¶ 13.

Here, the video recordings of Musk's and Teller's testimonies contain images of their facial expressions and body language, as well as audio of their voices, none of which are present in the released transcripts of their testimony. SMF ¶ 10. Similarly, the other individuals present

9

have a privacy interest to the extent their images and voices were recorded. Based on established case law, Musk, Teller, and other individuals present have a substantial privacy interest in these personal details. *See* SMF ¶¶ 12-13.

In light of the foregoing, disclosure of the video recordings would harm substantial privacy interests. Even if Musk is considered a public figure whose privacy interests are reduced, he continues to have privacy rights, particularly with respect to information in law enforcement files. Courts have recognized that even public officials "do not surrender all rights to personal privacy when they accept a public appointment." *Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (internal quotations omitted); *see also Canaday v. U.S. Citizenship & Immigr. Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008) (agreeing that public figures "do not forfeit all vestiges of privacy").

> **2. Plaintiff Has Not Identified a Relevant Public Interest in Disclosure of the Video Recordings, so the Privacy Interests at Stake Outweigh the Public Interest.**

On the other side of the balance, to overcome a privacy interest under Exemption 7(C), it is the FOIA requester's burden to "establish a sufficient reason for the disclosure." *Favish*, 541 U.S. at 172. Specifically, the requester must first show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake." *Id.* Critically, under the FOIA, the relevant public interest is whether disclosing personal information would shed light on governmental activities or operations. *See Rose*, 425 U.S. at 372 (Exemption 6 cases "require a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA] 'to open agency action to the light of public scrutiny'"); *see also FLRA*, 510 U.S. at 495 (the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the

FOIA,' which is 'contribut[ing] significantly to public understanding of *the operations or activities of the government*.'") (quoting *Reps. Comm*., 489 U.S. at 775) (emphasis in original). Thus, as relevant here, any public interest in disclosure must be grounded on how release of the video recordings would inform the public about how the SEC carried out its statutory duty in investigating Tesla and Musk. "[G]eneral public curiosity" about how Musk or Teller appeared and sounded during their testimonies simply "is not enough" to warrant disclosure under Exemption 7(C). *Jud. Watch, Inc.*, 876 F.3d at 350.

Plaintiff's FOIA request does not specify what public interest it seeks to serve, and its purported reason to obtain the video recordings—to use clips for its commercial endeavor in creating a documentary—is not a relevant public interest under the FOIA unless Plaintiff is making the video to shed light on the government's activities and operations. *See* SMF ¶ 14; Tallarico Decl., Ex. A; *see also McDonnell v. United States*, 4 F.3d 1227, 1255 (3d Cir. 1993) (noting that a "commercial interest in writing a thoroughly researched and well-documented book . . . is not a public interest justifying FOIA disclosure"). Plaintiff has not asserted that the purpose of the documentary is to shed light on the SEC's activities and operations. SMF ¶ 14. At best, Plaintiff has asserted that the "public interest" is to "help the public understand the relationship between Musk and the SEC—an agency he may soon affect in his new role [with the Department of Government Efficiency ("DOGE")]." *Id*. That vague and general explanation is not sufficient to show that Plaintiff is looking at how the SEC operated in connection with the matter that led to the testimony. It shows only that Plaintiff is interested in trying to consider what the interaction between DOGE and the SEC will be in the future.

Even if gaining understanding of the relationship between Musk and the SEC were a relevant public interest, Plaintiff must show that disclosure of the videos "is likely to advance"

11

the public interest. *See Favish*, 541 U.S. at 172. An important consideration is whether the public already has access to substantial information about the topic. If fulsome information is already available, further disclosure that only marginally increases public understanding is unlikely to outweigh countervailing privacy interests. *See, e.g., Jud. Watch, Inc.*, 876 F.3d at 350 (declining to order the release of a draft indictment of former Secretary of State Hillary Clinton despite the "weighty public interest" in evaluating government investigations of public officials, because that public interest was "greatly reduced" by the "voluminous information" already released); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (allowing withholding of additional information when the public interest had been "adequately served" by earlier release of redacted summaries of agency interviews).

      In this case, because the SEC has produced a verbatim written transcript of the testimonies at issue (SMF ¶¶ 7-8), Plaintiff already has information about any statements by Musk, Teller, their counsel, or counsel for the SEC that may shed light on the relationship between the SEC and Musk. The additional information, if any, that could be gleaned from the non-verbal elements of Musk's and Teller's testimonies would not be "likely to advance" any understanding of the relationship between Musk and the SEC. *See, e.g., NASA*, 782 F. Supp. at 633 (upholding withholding of the *Challenger* audio recording given the "extremely speculative and subjective nature" of what additional information could be gleaned from an audio recording where "NASA has provided the public with a transcript of the tape"); *see also Reps. Comm.*, 489 U.S. at 773 (finding that purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct"). In particular, the video recording of Teller's investigative testimony would have no bearing whatsoever on "the relationship between Musk and the SEC."

12

With respect to Musk, while it is possible that hints about the relationship may be gleaned from tones and body language, those hints pale in comparison to the substance that is in the transcripts as well as from the clear statements in the Commission's enforcement action against Musk and Musk's public reactions to that enforcement action. *See, e.g., Elon Musk commits to SEC settlement despite mocking tweets*, ABC News (Oct. 11, 2018) (available at https://abcnews.go.com/Business/elon-musk-commits-sec-settlement-mocking-tweets/story?id=58437587).

Because Plaintiff has not shown that "the information is likely to advance" any relevant public interest, "the invasion of privacy is unwarranted." *Favish*, 541 U.S. at 172.

> **B. Disclosure of the Video Recordings Would Result in Foreseeable Harm Within the Ambit of the Exemptions 6 and 7(C), and There Is No Reasonably Segregable Video Information That Can Be Released.**

Under the FOIA Improvement Act of 2016, in order to justify the withholding of a responsive record, the government must show that "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b) [of FOIA]," or that "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). With respect to Exemption 7(C) specifically, the purpose is to "protect the privacy of individuals identified in certain agency records, such that disclosure of identifying information is a harm in and of itself." *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021) (internal citation and quotations omitted). Thus, "when invoking Exemption 7(C), an agency need not establish much more than the fact of disclosure to establish foreseeable harm." *Id.; see also Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021) ("a court may find the foreseeable-harm requirement satisfied [for Exemption 6 withholdings] if the very context and purpose of the withheld material makes the foreseeability of harm manifest") (cleaned up). In this case, it is clear that disclosure of the

video recordings would foreseeably harm interests protected by the FOIA Exemptions 6 and 7(C), because, as discussed above, releasing the video recordings would result in unwarranted harm to privacy interests that individuals maintain in preventing the dissemination of video recordings of their investigative testimony.  *See supra* 7-10; SMF ¶ 15.

Even further, if the recordings are released here, it is foreseeable that they could be altered and used in ways that interfere with privacy interests—such as using the recordings to create unflattering and offensive memes or altering the files and passing them off as authentic recordings—and then be widely distributed.  SMF ¶ 15.  That potential for manipulation is exacerbated by the fact that there is now widely available technology that can be used to create entirely different video "deepfakes" based on a recording.  *Id*.

Additionally, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Because release of the video recordings would unjustifiably infringe privacy interests related to the appearance and sound of individuals during a law enforcement investigation, the entirety of the video recordings is properly withheld under Exemptions 6 and 7(C).  SMF ¶ 16.  Accordingly, all information has been appropriately withheld in full, and there is no information to segregate.  *Id.*; *see, e.g.*, *Nat'l Ass'n of Crim. Def. Lawyers v. DOJ*, 844 F.3d 246, 256 (D.C. Cir. 2016) (noting that when an exemption applies to an entire record, "there are no non-exempt portions left to segregate").

V.  **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated: May 9, 2025                                    Respectfully submitted,

/s/ *Kevin Solonsky*
Kevin Solonsky
Office of the General Counsel
U.S. Securities and Exchange Commission
D.C. Bar No. 437119
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5014
Fax: (202) 772-9263
SolonskyKD@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*