UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JIGSAW PRODUCTIONS LLC,

    Plaintiff,

    v.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Defendant.

Civil Action No. 1:24-CV-02358-TSC

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S**
**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

The sole issue remaining in this matter is whether Defendant, the Securities and Exchange Commission ("SEC"), should release to Plaintiff, Jigsaw Productions LLC, the portion of the August 29, 2018 video from Elon Musk's investigative testimony that parallels the portion of the testimonial transcript that Defendant released to Plaintiff on March 18, 2025 ("Video") in response to Plaintiff's Freedom of Information Act ("FOIA") request.

Plaintiff argues in its Memorandum of Law in Opposition to the SEC's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Plaintiff's Brief") that the Video should be released because Musk is an "omnipresent public figure" who "voluntarily allows his face, body, and voice to be recorded and broadcast by all manner of entities." Plaintiff's Brief at 19-20. Plaintiff reasons that because Musk has made his image and voice available to the public, Musk does not have a privacy interest in how he looked and sounded during investigative testimony. Plaintiff's Brief at 2. By allowing his image and voice to be shown in some situations, however, Musk not waived his privacy interest in his image and voice in *all* situations. The Video shows compelled law enforcement testimony, and Plaintiff does not and cannot show that Musk lacks a privacy interest in recordings that were taken in connection with a

non-public SEC investigation and have never been provided to the public. Critically, Plaintiff does not even argue that there is any relevant public interest in disclosing the Video. As a result, Musk's privacy interest in the Video necessarily outweighs the lack of public interest in disclosure. In addition, because Musk has a privacy interest in the Video, disclosing the Video would necessarily impede on those privacy interests and therefore result in foreseeable harm, and no portions of his image and voice are segregable and subject to release.

## I.   Musk Has a Privacy Interest in His Image and Voice in the Video.

### A. Individuals Often Have a Privacy Interest in Materials Compiled for Law Enforcement Purposes.

As the SEC explained in its Memorandum of Points and Authorities in Support of SEC's Motion for Summary Judgment, Doc. No. 18-1 ("SEC's Opening Brief") at 4-7, the SEC withheld the Video pursuant to FOIA Exemptions 6 and 7(C). Exemption 7(C) "is more protective of privacy than Exemption 6." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994). When agencies invoke both exemptions, courts focus on Exemption 7(C) because it "establishes a lower bar for withholding material." *Nova Oculus Partners, LLC. v. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) (cleaned up). Under Exemption 7(C), agencies may withhold "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The threshold issue for Exemption 7(C) protection is whether the record at issue was compiled for law enforcement purposes. Here, the SEC took Musk's testimony in connection with a law enforcement investigation, and Plaintiff does not challenge the SEC's showing that the Video was compiled for a law enforcement purpose.

Plaintiff's challenge is limited to contending that Musk does not have a privacy interest in how he appeared and sounded during investigative testimony. Although Plaintiff's Brief focuses on foreseeable harm, Plaintiff acknowledges that the privacy interest and foreseeable harm analyses are "much the same" and "substantively overlap." Plaintiff's Brief at 10. Thus, the SEC will continue

to focus on the more developed privacy interest standard. While courts require "a substantial, as opposed to a *de minimis* privacy interest," "use of the word substantial in this context means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). In addition, "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125-26 (D.C. Cir. 2004) (in applying Exemption 6, treating items such as biographical matters, employment history, and military records as personal matters without regard to whether they were embarrassing). In determining whether a privacy interest exists under Exemption 7(C), courts have recognized that individuals have a privacy interest in information related to their involvement in a law enforcement investigation, even when the fact that they were involved in a law enforcement investigation is public knowledge. *See, e.g., Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762-63 (1989) (describing Exemption 7(C) as reflecting a privacy interest in "avoiding disclosure of personal matters" and maintaining "the individual's control of information concerning his or her person"); *Judicial Watch, Inc. v. Nat'l Archives & Recs. Admin.*, 876 F.3d 346, 349 (D.C. Cir. 2017) (determining that a "distinct" privacy interest was retained in the contents of the subject's investigation files, even though the existence of the investigation was public knowledge); *Detroit Free Press Inc. v. Dep't of Justice*, 829 F.3d 478, 481-82 (6th Cir. 2016) (finding privacy interest in booking photos even where the identity of the person arrested is known).

    **B. The SEC Demonstrated that Musk Has a Privacy Interest in the Video.**

The SEC's Opening Brief (at 7-10, 13-14) provides ample reason to find that Musk has a privacy interest in the Video. The SEC explained that individuals have a well-recognized privacy interest in the content of law enforcement files because of the stigma associated with law

enforcement investigations.  Consequently, Musk has a privacy interest in imagery and audio showing him being subjected to an investigative inquiry, as well as his body language, tone, inflection, and pauses captured on video during investigative testimony.  SEC's Opening Brief at 7.  In addressing foreseeable harm, the SEC further explained that "if the recordings are released here, it is foreseeable that they could be altered and used in ways that interfere with privacy interests—such as using the records to create unflattering and offensive memes or altering the files and passing them off as authentic records."  *Id*. at 14.

The nature of the evidence and level of detail the SEC has provided is consistent with the statute.  Exemption 7(C) requires a showing that an unwarranted invasion of privacy "could reasonably be expected," 5 U.S.C. § 552(b)(7)(C), which the SEC has more than satisfied by showing that it "is foreseeable" that the video could be manipulated or employed to create offensive content.  The SEC's declaration is also in line with the evidence and detail provided in other cases where courts have found the existence of a privacy interest.  Courts regularly rely on predictions about what will happen in the future because they do not have concrete evidence of harm that a disclosure that has not yet occurred will cause.  *See, e.g., N.Y. Times Co. v. NASA*, 782 F. Supp. 628, 631-32 (D.D.C. 1991) (in case concerning recording of Challenger astronauts, basing a finding of a privacy interest on assumption that reporters would obtain recordings and seek the reaction of families of the astronauts); *Advocs. for Highway and Auto Safety v. Fed. Highway Admin.*, 818 F. Supp. 2d 122, 131 (D.D.C. 2011) (finding privacy interest of truck drivers filmed while driving was more than *de minimis* where they were promised confidentiality and risked the public shame of appearing drowsy while driving).  Plaintiff's reliance on *Human Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 712 (D.C. Cir. 2025), does not support its contention that the SEC has not sufficiently identified a privacy interest.  *See* Plaintiff's Brief at 11-12.  In *Park Police*, law enforcement records were not at issue, and the agency "merely recite[d] the elements of the analysis for whether

Exemption 6 applies." *Id.* at 715.  Here, law enforcement records are at issue, and the SEC has done more than merely recite the elements of Exemptions 6 and 7(C) because it has pointed to privacy concerns about offensive memes and manipulation of the Video.

Plaintiff also suggests that only limited "sensitive or personal" information could be protected (Plaintiff's Brief at 12) and ignores that a reaction to investigative testimony, even a reaction to testimony about seemingly mundane matters, could affect privacy interests.  Any reaction (or lack of reaction) in the course of investigative testimony could be analyzed and questioned by persons seeking to criticize Musk or could be the source of offensive memes or manipulated testimony.  While Musk does not have a privacy interest in the fact that he was investigated or in facts related to his violation of the federal securities laws, that does not mean that he no longer has a privacy interest in how he appeared or reacted during non-public investigative testimony.  *Cf. Citizens for Responsibility and Ethics in Washington v. DOJ*, 978 F. Supp. 2d 1, 10 (D.D.C. 2013) ("Although Senator Ensign does not have a substantial privacy interest in the fact that he was targeted in a criminal investigation, he retains a cognizable privacy interest in the contents of the file.").

While Plaintiff seeks to downplay the fact that an individual's image and voice provide a great deal of information that is not in a transcript, it is telling that Plaintiff wants the Video for its documentary film instead of simply having someone read the transcript it already has.  Plaintiff relies on a Fourth Amendment case to support its position that "the physical characteristics of a person's voice" are not private, but that case concerned obtaining voice exemplars in a grand jury proceeding, not in hearing how a person sounded while giving testimony in a non-public, law enforcement investigation.  *See U.S. v. Dionisio*, 410 U.S. 1, 13-14 (1973).[1]  Here, Plaintiff is

---

[1] Even if the issue in *Dionisio* were the same as the issue here, the Supreme Court has said, "The question of the statutory meaning of privacy under the FOIA is, of course, not the same as the

seeking information about investigative testimony, which implicates privacy interests even more than a standard conversation, and the *Dionisio* Court recognized that the "content of a specific conversation" would be protected. *Id.* at 14.

Plaintiff also seeks to minimize the impact of unflattering and offensive memes or of persons altering the files and passing them off as authentic records (Plaintiff's Brief at 16-18), but Plaintiff's arguments grasp at straws. First, accepting concerns about offensive memes and manipulated video here would not allow the government to withhold all videos ever subject to a FOIA request. *See* Plaintiff's Brief at 16. If a public interest outweighed an individual's privacy interest, the FOIA could require production of a video. Here, however, Plaintiff does not even attempt to assert a public interest. Also, in cases involving videos that are not connected to law enforcement purposes and are covered only by Exemption 6, a privacy interest may not be as strong as here where Exemption 7(C) applies. Second, Plaintiff's invocation of the First Amendment is irrelevant. *See id.* The fact that offensive depictions of persons may be protected under the First Amendment only further demonstrates the foreseeablility of such harms to privacy interests; it does not mean that images must be released under the FOIA so that they can become a basis for offensive depictions of persons. Third, the fact that Musk has released memes of himself in no way suggests that memes that others make of him based on his appearance during investigative testimony would not be offensive and interfere with his privacy interests. *See id.* at 16-17. Similarly, the fact that people have manipulated audio and video of Musk that already exists does not mean that manipulated video of investigative testimony would not be offensive. *See id.* at 17-18. It is foreseeable that people would alter the Video to show sworn testimony that did not actually

---

question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *Reporters Comm.*, 489 U.S. at 762 n.13.

occur, and having the actual video publicly available in no way assures that people will not be deceived by manipulated testimony.

To provide further support regarding the harm that would arise from manipulation of the Video, the SEC is submitting a declaration from the Director of Security Intelligence at Tesla, Inc. that details the privacy interest of Musk in the Video.  *See* Exhibit A hereto.  The declaration provides examples of "deep fakes" and other malicious online postings where Musk's image and voice from video clips and audio recordings have been manipulated and explains how these postings have caused Musk, Tesla, and others significant economic and personal harm.  The declaration details how in one recent instance,

> a malicious actor posted a deep fake video of Mr. Musk supposedly offering a cryptocurrency giveaway.  This scam not only featured a deep fake video of Mr. Musk purportedly saying things he never said, but also prominently displayed Tesla's corporate logo and referenced a fake corporate news site that was intended to induce innocent consumers to send money to the scammers.  This negatively affects Mr. Musk's personal privacy interests, damages Tesla's corporate reputation and brand, and causes harm to consumers who are duped by the scheme.

Exhibit A at 4.  In light of Musk's privacy interest in information related to a law enforcement investigation and the harm that releasing the Video would have, Musk has a privacy interest in the Video.

### C. The Presence of Various Videos of Musk Does Not Deprive Him of a Privacy Interest in his Appearance During Non-Public Investigative Testimony.

Notwithstanding the difference between videos of non-public investigative testimony and other situations where Musk consented to having his image and voice made public, Plaintiff contends that actions taken by Musk should result in him losing all privacy interest in his image and voice.  Plaintiff argues that Musk has waived his privacy rights because he has taken action to augment his status as a public figure, including serving in the Government, serving as CEO of a publicly traded company, and giving interviews.  Plaintiff's Brief at 2.  Plaintiff also contends that

Musk compromised his privacy rights in the Video because Musk "discussed the SEC's lawsuit publicly (including disparaging the agency)." *Id.* at 26; *see also id.* at 25.

Public figures, however, do not forfeit their privacy rights in their image or voice as a result of their notoriety, and Musk should not be found to have waived his privacy rights in the Video by allowing his image and voice to be seen in other contexts, including in other contexts relating to the SEC's enforcement action against him. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (although public officials "may have a somewhat diminished privacy interest," public officials "do not surrender all rights to personal privacy when they accept a public appointment") (cleaned up); *Canaday v. ICE*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008) ("[p]ublic figures do not forfeit all vestiges of privacy by virtue of their status"). The fact that Musk has allowed his image and voice to be used in connection with statements about his views of the SEC's enforcement action against him does not deprive him of a privacy interest in how he appeared during investigative testimony. Plaintiff points to nothing that suggests that once an individual discusses a matter in general, the individual has no privacy interest in other situations related to the matter.[2] To the contrary, precedent establishes that information covered by Exemption 7(C) is not covered by the "public domain" doctrine unless the "specific information"

---

[2] To support its claim that Musk cannot have a privacy interest in the recording of investigative testimony because of other videos of different situations, Plaintiff relies on cases that do not support any such claim. *See* Plaintiff's Brief at 19. To the extent the cases base a decision to release information on information that is publicly available, they look to whether the same information is available to the public. *See Playboy Enters., Inc. v. Dep't of Justice*, 516 F. Supp. 233, 246 & n.12 (finding Exemption 7(C) protects the identities of confidential informants and the information furnished only by them except where the identity of and information about one confidential informant was available in a public report and a book the informant published); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1085 (basing decision on absence of reason to believe disclosure of names would lead to harassment where matter at issue was not controversial, not on the presence of public information); *Citizens for Resp. and Ethics in Wash. v. DOJ*, 840 F. Supp. 2d 226, 233-34 (noting that a member of Congress would not have a privacy interest in information he placed in the public domain about an investigation, but recognizing privacy interest in documents in an investigative file).

that the plaintiff seeks has been publicly disclosed. *Kowal v. Dep't of Just.*, 107 F.4th 1018, 1031 (D.C. Cir. 2024).

While the existence of public statements may relate to the existence of a public interest, statements that a person intends to make public do not eradicate a privacy interest in what happens in a private situation. Similarly, Plaintiff's statement that Musk has lost protection of his privacy rights because the SEC "brought and settled a lawsuit against Musk in connection with the interview," Plaintiff's Brief at 26, provides no basis for a finding Musk lacks a privacy interest in the voices and images in the Video. Liability for a violation of the federal securities laws does not necessarily lead to losing a privacy interest in a defendant's voice and image.

Plaintiff's contention that the government's actions have deprived Musk of any privacy interest in the Video is similarly baseless. *See* Plaintiff's Brief at 19, 29, & 31.[3] Such an argument would succeed only if the availability of an individual's image and voice deprived the individual of a privacy interest in all recordings of the individual's image and voice. As stated above, the law is clear that public officials whose images and voices are known retain privacy interests. *See Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1092. Thus, they should not be deemed to waive a privacy interest in non-public recordings of their image and voice in specific situations, and particularly in law enforcement investigations, by allowing their image and voice to be used in other situations.

---

[3] Plaintiff relies on *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014); and *Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 818 (D.C. Cir. 2021), for his argument that the Video should be released because "the government cannot regularly place Musk's likeness in the public domain and simultaneously attempt to withhold it under FOIA." Plaintiff's Brief at 31. These cases, however, have nothing to do with the effect of the government releasing information in the public domain on the withholding of records under FOIA. Plaintiff appears to cite the cases to suggest it has provided evidence that controverts the SEC's evidence, but Plaintiff has not provided any evidence that a recording of the investigative testimony is already publicly available or that there is not a very real possibility that persons would use the Video in ways that are offensive or damaging to Musk.

Plaintiff also argues that the SEC waived Musk's privacy rights by providing Plaintiff with the releasable text that parallels the Video. *See* Plaintiff's Brief at 26 ("It is incomprehensible that release of the instant footage could do anything to harm Musk's reputation when . . . the SEC has released the transcript of Musk's testimonial interview"). The issue here, however, is not what Musk said but how he looked and sounded as he made the statements, and the transcript does not contain that information. The Video is also different from the public interviews and appearances that Musk has arranged and had a significant degree of control over. Unlike with these public interviews and appearances, Musk did not voluntarily submit to the investigative testimony. Rather, he was compelled to testify and appeared pursuant to a subpoena. *See* Exhibit B hereto (Musk Transcript at 14, Docket 19-5 at 14) ("Q: Is this a copy of the subpoena you're appearing pursuant to here today? A: Yes, I believe so."). With his testimony, Musk did not control the questions being asked; who was asking the questions; or the time, place, or duration of his appearance. Privacy involves "an individual's control of information concerning his or her person," *Horner*, 879 F.2d at 876 (quoting *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989)), and Musk has a privacy interest in not having his image and voice made public in a setting that he did not control. Musk's image and voice in the Video, therefore, should remain protected unless outweighed by a valid public interest, which Plaintiff fails to articulate.

## II.     Plaintiff Has Not Claimed a Public Interest in Releasing the Video.

After a privacy interest is established, a plaintiff bears the burden of demonstrating a public interest in favor of disclosing a record that contains private material. *NARA v. Favish*, 541 U.S. 157, 172 (2004) (FOIA requestor required to "establish a sufficient reason" for disclosure of privacy information under Exemption 7(C)). The burden of establishing a public interest requires FOIA requestors to show that disclosing personal information would "she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"

*Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994)*; see also Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (The goal of FOIA is to expose the operations of federal agencies "to the light of public scrutiny").  The "only relevant 'public interest in disclosure' to be weighed . . . is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the *operations or activities of the government*.'" *Dep't of Defense v. FLRA*, 510 U.S. at 495 (quoting *Reporters Comm.*, 489 U.S. at 775) (emphasis in original).  A FOIA requestor must, therefore, "show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted." *Favish*, 541 U.S. at 172.

Plaintiff has not satisfied its burden of establishing a public interest.  Although Plaintiff acknowledges that "the 'core purpose' of FOIA is to increase 'public understanding of the operations or activities of the government,'" Plaintiff's Brief at 7 (quoting *Reporters Comm.*, 489 U.S. at 775), Plaintiff says nothing whatsoever about any public interest in its brief.  The brief does not even contain the phrase "public interest."

Plaintiff's inability to identify any relevant public interest shows that this case is readily distinguishable from the discretionary release by the Department of Justice of the audio of former President Joe Biden's interview with special counsel Brian Hur in Judicial Watch's case seeking release of those records.  *See Judicial Watch, Inc. v. Dep't of Justice*, 1:24-cv-00700-TJK, ECF No. 66 (D.D.C., May 20, 2025).  In that case, Judicial Watch argued that it was in the public interest to disclose the audio.  *See* Exhibit C hereto (*Judicial Watch*, 1:24-cv-00700-TJK, ECF No. 36-1 at 17). Judicial Watch reasoned that the release of the audio would help the public better understand the evidence on which Hur relied in declining to recommend that former President Biden be prosecuted given that Hur had concluded that former President Biden would present himself to a jury, as he did during his interview, as a "sympathetic, well-meaning, elderly man with a poor memory." *Id.* at 15-18.  Judicial Watch argued that disclosure of the audio would serve the public interest because it would assist the public in determining whether Hur properly performed his task.  *Id.* at 15-18.  That DOJ decided to make a discretionary release of the audio, without more, does not support Plaintiff's

claim that public officials do not have a privacy interest in their recorded interviews but rather suggests that consideration of the public interest is key to determining whether release is proper. *See* Plaintiff's Brief at 15 (relying on the release of the Biden audio tape to suggest the absence of a privacy interest in recordings).

### III.    Musk's Privacy Interest in the Video Outweighs any Public Interest in the Video.

If a privacy interest in the requested material exists and a requestor fails to identify a public interest in disclosure, the privacy interest prevails. *See e.g., Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989) ("We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time"); *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904-05 (D.C. Cir. 1996) (public interest in personal identifying information is insubstantial unless requester puts forward compelling evidence of agency or official misconduct); *FLRA v. Dep't of Defense*, 984 F.2d 370, 375 (10th Cir. 1993) ("[E]ven a minimal privacy interest . . . outweighs a nonexistent public interest"); *Halloran v. Veterans Admin.,* 874 F.2d 315, 322 (5th Cir. 1989) ("[E]ven a small and potentially uncertain invasion of privacy" is unwarranted "if there are no public interests supporting the disclosure of the particular information"). Here, the SEC established a privacy interest and Plaintiff failed to demonstrate a public interest. Consequently, Exemptions 6 and 7(C) protect the Video.

### IV.    The SEC Has Satisfied the Foreseeable Harm Requirement.

The FOIA Improvement Act of 2016 allows the Government to withhold information under a FOIA exemption only if an "agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).  As noted above, Plaintiff focuses its argument on the foreseeable harm requirement, but under Exemptions 6 and 7(C), foreseeable harm is effectively demonstrated as part of the showing necessary to demonstrate the applicability of the exemption: that an unwarranted invasion of privacy is reasonably expected. *See Amiri v. Nat'l Sci. Found.,* No. 20-02006, 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021) (although agency did not expressly address foreseeable harm standard, context provided by agency regarding individual privacy harms in establishing that

Exemption 6 applied was sufficient to make harm "manifest"); *Ecological Rts. Found. v. EPA,* 541 F. Supp. 3d 34, 65 (D.D.C. 2021) ("an agency need not establish much more than the fact of disclosure to establish foreseeable harm" when invoking Exemption 7(C)); *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.,* 567 F. Supp. 3d 97, 127-28 (D.D.C. 2021) ("relatively generalized assertion" that disclosing employee names would invade privacy "would likely be enough" to meet foreseeable harm burden for Exemption 7(C)); *Ball v. U.S. Marshals Serv.*, 2021 WL 4860590, at *9 (D.D.C. 2021) (agency justifications for nondisclosure under Exemption 7(C) "generally are also sufficient evidence of foreseeable harm"); *Louise Trauma Ctr. v. Dep't of Homeland Security*, 2022 WL 1081097, at *7 (D.D.C. 2022) (agency statement that disclosing names of outside experts would subject them to harassment for providing training to asylum officers sufficient to establish foreseeable harm as "[t]hese predicted results of disclosure are exactly what Exemption 6 seeks to prevent." (quoting *Ecological Rts. Found.,* 541 F. Supp. 3d at 65-66)). Because the SEC has shown a privacy interest, it has also shown that disclosure would result in a foreseeable harm.

## V.     No Segregable Portion of the Video Is Releasable.

Plaintiff argues that the SEC was obligated to produce segregable portions of the Video but failed to do so.  Plaintiff is correct that under FOIA "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt."  The SEC, however, properly determined that all of the Video is protected by Exemption 7(C) and that the release of any portion of it would cause foreseeable harm.  Plaintiff seeks only the image and voice of Musk in connection with his law enforcement testimony.  Although Musk has uttered some of the same statements as in the Video in other contexts, these other contexts (such as in speeches, interviews, and the like) were not in connection with a law enforcement investigation, and they are not identical to what appears in the Video.  The entire Video reflects Musk's demeanor during a law enforcement investigation, and Plaintiff provides no reason to believe that his

demeanor is protected only if he is acting in a way that is plainly embarrassing, particularly where any portion of the Video could be used to create offensive memes or to alter the record and pass it off as an authentic video. Accordingly, there is no segregable, non-exempt material in the Video.

## CONCLUSION

For the reasons stated here and in the SEC's Opening Brief, the Court should grant the SEC's Motion for Summary Judgment.

Respectfully submitted,

/s/ Kevin D. Solonsky
KEVIN D. SOLONSKY
Senior Counsel
United States Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549-9613
D.C. Bar No. 437119
solonskykd@sec.gov
(202) 551-5014

Dated: August 1, 2025