**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JIGSAW PRODUCTIONS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. SECURITIES AND EXCHANGE COMMISSION,**<br><br>Defendant. | No. 24-cv-2358 (TSC) |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jigsaw Productions, Inc. is a documentary film company producing a feature on

Elon Musk.  It brought this action against the Securities and Exchange Commission ("SEC")

under the Freedom of Information Act ("FOIA"), seeking the release of a video and audio

recording of Musk's interview with SEC civil investigators.  Because the SEC has already

released a transcript of that interview and because Musk is a highly visible public figure whose

image, demeanor, and voice are already well known, the SEC has not identified a substantial

privacy interest that would be actually impeded by releasing the recording.  The court will

therefore DENY the SEC's Motion for Summary Judgment, ECF No. 18; GRANT Jigsaw's

Cross Motion for Summary Judgment, ECF No. 19; and order the recording's release in part.  A

separate order will follow.

## I.    BACKGROUND

Elon Musk is a well-known businessman currently serving as Chairman or Chief

Executive Officer of several major international companies, including Tesla, SpaceX, and X

Corp., the social media giant formerly known as Twitter.  *See* Pl.'s Statement of Undisputed

Material Facts ¶¶ 6–8, ECF No. 19-2 ("Pl.'s SUMF").  Musk also recently served as a high-

ranking official in the Trump Administration, where he led the "Department of Government

Efficiency" and presented at several televised meetings in the Cabinet Room and Oval Office.

*Id.* ¶¶ 10–11.  Musk has been named Time Magazine's Person of the Year, and he has given, at

least, over one hundred video interviews and over ten audio interviews.  *Id.* ¶¶ 9, 13–14.  His

repeated appearances on the Joe Rogan video podcast have generated a cumulative 137 million

views on YouTube.  *Id.* ¶¶ 26–27.  Musk is, in other words, an exceptionally famous public

figure whose voice, mannerisms, and likeness are widely available in the public domain.

In September 2018, the SEC publicly brought civil charges against Musk for securities

fraud, alleging that he made "a series of false and misleading tweets about a potential transaction

to take Tesla private."  Press Release, *Elon Musk Charged with Securities Fraud for Misleading

Tweets*, SEC. & EXCH. COMM'N (Oct. 1, 2018), https://www.sec.gov/newsroom/press-

releases/2018-219.[1]  Musk settled the charges by publicly paying a $20 million civil penalty.

Press Release, *Elon Musk Settles SEC Fraud Charges*, SEC. & EXCH. COMM'N (Oct. 2, 2018),

https://www.sec.gov/newsroom/press-releases/2018-226.  Musk discussed the matter in public,

including on 60 Minutes, the televised national news program.  *See* Pl.'s SUMF ¶ 18; *see also*

Decl. of Gunita Singh ¶ 16, ECF No. 19-3.

In February 2024, Jigsaw submitted a FOIA request to the SEC, seeking materials

generated as part of the SEC's civil investigation into Musk.  *See* Def.'s Statement of Material

Facts ¶ 1, ECF No. 18-2 ("Def.'s SOMF").  Jigsaw requested the written transcript and video

---

[1] The court may take judicial notice of government records posted on government websites.  *See
Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016).

recording of Musk's August 2018 interview with SEC investigators.  *See id.* ¶ 2.  The SEC released a 281-page transcript of Musk's interview—with redactions—but withheld the video recording in full.  *See* Pl.'s SUMF ¶¶ 21–22.  The SEC reasoned that Musk, Tesla executive Samuel Teller, "and other individuals present during the testimony (including SEC staff, defense counsel, the Court reporter, and the videographer) have a privacy interest in their voices and images."  Def.'s SOMF ¶ 11.

The parties now move for summary judgment.  The SEC contends that it properly withheld the video recording under Exemptions 6 and 7(C)—two exemptions which protect the personal privacy of individuals.  *See* Def.'s Mem. at 4, ECF No. 18-1.  Jigsaw has clarified that it seeks only the release of the "video and audio of Musk, for which the SEC has already provided the corresponding unredacted transcript."  Pl.'s Mem. at 3, ECF No. 19-1 (cleaned up).  Jigsaw "does not . . . challenge the withholding of the [video] or [audio] of any other" person present for the interview, "such as videographers, attorneys, SEC staff, or Samuel Teller."  *Id.*  In Jigsaw's view, the SEC has failed to demonstrate that Musk—given his ubiquity in the national and international media—has a substantial privacy interest in his voice and image that would be foreseeably harmed by release of the recording.  *See id.* at 3–4.

## II.    LEGAL STANDARDS

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Act mandates the "broad disclosure of Government records," *CIA v. Sims*, 471 U.S. 159, 166 (1985), and "generally commands that government agencies . . . 'shall make [requested] records promptly available to any person.'"  *Reps. Comm. v. FBI*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting 5 U.S.C. § 552(a)(3)(A)).  Although FOIA contains nine exemptions which permit

agencies to withhold certain information in certain limited circumstances, these "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 712–13 (D.C. Cir. 2025) (quoting *Rose*, 425 U.S. at 361). "Accordingly, FOIA's exemptions are to be narrowly construed." *Public Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008). And the "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Hum. Rts. Def. Ctr.*, 126 F.4th at 713 (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

In 2016, Congress amended FOIA to address the government's overuse of exemptions and to "further limit[] withholding pursuant to all exemptions, except Exemption 3." *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024). Specifically, Congress "add[ed] [a] foreseeable harm requirement," which "'imposes an independent and meaningful burden on agencies.'" *Id.* (quoting *Reps. Comm.*, 3 F.4th at 369). As a result of that requirement, an agency must demonstrate not only that "a requested record falls within an exemption," but also that "disclosure of that record would foreseeably harm an interest protected by the exemption." *Id.* To meet this additional burden, an agency "must provide 'a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede' the interests protected by a FOIA exemption." *Id.* (quoting *Reps. Comm.*, 3 F.4th at 370). The analysis of "whether a record falls within an exemption" and whether disclosure would foreseeably harm a protected interest are "distinct, consecutive inquiries," but they do "substantively overlap." *Hum. Rts. Def. Ctr.*, 126 F.4th at 716 (cleaned up). Accordingly, the court's analysis overlaps here. *See id.*

An agency may carry its burden of justifying nondisclosure by submitting affidavits. *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 58 F.4th 1255, 1262 (D.C. Cir. 2023). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of bad faith." *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "If the government fails to carry this burden, then a court may order release of the documents at issue." *Cornucopia Inst. v. Agric. Mktg. Serv.*, 312 F. Supp. 3d 85, 96 (D.D.C. 2018) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980)); *see also* 5 U.S.C. § 552(a)(4)(B) (providing this court with "jurisdiction . . . to order the production of any agency records improperly withheld from the complainant").

### III.    DISCUSSION

The SEC asserted Exemptions 6 and 7(C) to withhold the video of Musk's interview. Both exemptions "seek to protect the privacy of individuals identified in certain agency records," but "'Exemption 7(C) is more protective of privacy than Exemption 6.'" *ACLU v. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994)). While Exemption 7(C) protects "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), Exemption 6 only applies to the personal information of a particular individual "the disclosure of which would constitute a *clearly* unwarranted invasion of personal privacy." *Id.* § 552(b)(6) (emphasis added). When an agency invokes both exemptions, courts "focus" on Exemption 7(C) because it "'establishes a lower bar for withholding material.'"

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.* ("*CREW II*"), 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014) (quoting *ACLU*, 655 F.3d at 6).  Still, to invoke either exemption, an agency must point to a privacy interest that is substantial, meaning more than *de minimis*.  *See ACLU*, 655 F.3d at 12 (citing *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008)); *see also Chase v. Dep't of Just.*, 301 F. Supp. 3d 146, 155 (D.D.C. 2018) ("This privacy interest must be substantial, but . . . a substantial privacy interest is anything greater than a *de minimis* privacy interest." (cleaned up)).

If the agency identifies a substantial privacy interest, the court must then "balance [that] privacy interest against the public interest in disclosure."  *CREW II*, 746 F.3d at 1091 (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004)).  But if there is no substantial privacy interest, no balancing is required because disclosure is the default under FOIA and release of the information could not constitute "an unwarranted invasion of personal privacy," let alone actually impede the privacy interests that Exemptions 6 and 7(C) seek to protect.  5 U.S.C. § 552(b)(7)(C); *cf. Multi Ag Media*, 515 F.3d at 1229 ("If no significant privacy interest is implicated[,] FOIA demands disclosure." (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).

Jigsaw does not dispute that the withheld records constitute personal information under Exemption 6 and law enforcement records under Exemption 7(C).  Instead, it argues that the SEC has failed to demonstrate any substantial privacy interest, much less any foreseeable harm to Musk's privacy interests that would flow from disclosure of the video.  The court agrees.

Although an individual ordinarily has a substantial privacy interest in the contents of an interview with law enforcement, that interest is substantially diminished—if not eliminated—when, as here, the contents of the interview have already been publicly released.  *See CREW II*,

Page 6 of 12

746 F.3d at 1092. It is well established that "one can have no privacy interest in information that is already in the public domain." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 840 F. Supp. 2d 226, 233 (D.D.C. 2012); *see also Marino v. DEA*, 685 F.3d 1076, 1080 (D.C. Cir. 2012) ("Under FOIA's public domain exception, an agency may not rely on an otherwise valid FOIA exemption to justify withholding information that is already in the public domain." (cleaned up)). "[T]he public already knows who [Musk] is, what he was accused of," what he said in his interview with the SEC, and that he settled the charges for $20 million. *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998). Furthermore, Musk has publicly discussed the SEC matter on national television. *Cf. Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (politician waived right to have his name redacted from responsive documents regarding events he publicly discussed).

Because the SEC has previously disclosed the fact and substance of Musk's interview by releasing the transcript and bringing a highly public civil enforcement action against him, the typical reasons for withholding law enforcement records—such as the stigma associated with law enforcement investigations—do not hold weight. The cat is out of the bag. The SEC must "provide 'a *focused* and concrete demonstration of why *the particular type of material at issue*'"—the video and audio of an interview whose contents are already public—will foreseeably harm a substantial privacy interest. *Leopold*, 94 F.4th at 37 (emphasis added) (quoting *Reps. Comm.*, 3 F.4th at 370). Despite multiple opportunities to submit affidavits, it has failed to do so.

The SEC notes that a video and audio recording reveals details about a person's likeness, mannerisms, and voice that would not be disclosed by a paper transcript. It is true that an audio or video recording captures information—including a person's voice—that "is distinct and in

addition to the information contained in the words themselves." *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc).  As a general matter and in the abstract, individuals ordinarily have a substantial privacy interest in their voice and likeness, and, more specifically, in the way they comport themselves under questioning in an interview.  *Cf. Advocates for Highway & Auto Safety v. Fed. Highway Admin.*, 818 F. Supp. 2d 122, 128 (D.D.C. 2011).  But to establish foreseeable harm to Musk's privacy interests, the SEC cannot rely on "generalized assertions" or "abstract fears."  *Reps. Comm.*, 3 F.4th at 369 (cleaned up); *see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (rejecting "general explanations").  It must instead "specifically focus its foreseeable harm demonstration" on *Musk's* privacy interests.  *Reps. Comm.*, 3 F.4th at 370.

And Musk—as a world-famous public figure whose voice, likeness, and mannerisms are widely publicized and easily accessible on the internet, including in interviews where he answered probing questions—does not face the same harms to his privacy interests faced by an ordinary person or even a less known celebrity.  *Cf. Marino*, 685 F.3d at 1080 ("[A]n agency may not rely on an otherwise valid FOIA exemption to justify withholding information that is already in the public domain." (cleaned up)).  Although "public officials do not surrender all rights to personal privacy when they accept a public appointment," *CREW II*, 746 F.3d at 1092, Musk's image, voice, and mannerisms are far more public than that of a private individual who has not held press conferences in the Oval Office and Cabinet Room or gone on national television.

The SEC's reliance on *Advocates for Highway and Auto Safety* is thus misplaced because that case involved private individuals—truck drivers—who "were promised confidentiality" in exchange for their participation in a safety study that recorded them while driving.  818 F. Supp.

3d at 129.  Indeed, the *Advocates* Court noted that "video may reveal facial expressions" that "are not generally available in the ordinary course of daily life."  *Id.* at 128–29.  This case, by contrast, involves a prominent public figure whose image, voice, and mannerisms are widely available in the public domain, and whose statements in the SEC interview are already public. There is no indication, moreover, that the SEC promised Musk confidentiality before subpoenaing him or before he testified.

Nor can the SEC rely on *New York Times Co. v. NASA*.  There, the D.C. Circuit held that an audio "tape of the voices of the Challenger crew meets the threshold test" for Exemption 6 because the voice inflections of particular individuals qualify as personal information not already revealed by a paper transcript.  *N.Y. Times*, 920 F.2d at 1004.  That much is not in dispute in this case because Jigsaw does not contest that the video or audio of Musk's interview qualifies as personal information and thus meets the threshold for Exemption 6.

Instead, Jigsaw contends that the SEC has identified no substantial privacy interest, let alone one that will be foreseeably harmed by the recording's release.  On this issue, the *NASA* case offers the SEC little support because the *NASA* Court "remand[ed] . . . for the district court to consider the strength of the private and public interests involved before deciding whether NASA must release the Challenger tape."  *N.Y. Times*, 920 F.2d at 1004; *see also id.* at 1009 ("Whether disclosure of the Challenger tape in this case would constitute a clearly unwarranted invasion of privacy, we do not know and cannot discern on the record before us.").  To be sure, the *NASA* Court did hint that "the horror in the voices on the tape" of "astronauts in the throes of their death"—voices that "may reveal . . . their thoughts and feelings at the very moment of their deaths"— would implicate significant privacy interests.  *See id.* at 1006, 1010; *see also N.Y. Times Co. v. NASA*, 782 F. Supp. 628, 631–32 (D.D.C. 1991) (finding the existence of a privacy

interest on remand).  But it is a stretch to compare a harrowing tape recording of astronauts' last moments aboard a space shuttle before explosion to the recording of a CEO's interview with the SEC regarding business affairs.

The SEC has indicated only that the recording of Musk "contain[s] images of [his] facial expressions and body language, as well as audio of [his] voices."  Decl. of Mark Tallarico ¶ 13, ECF No. 18-3.  Such a statement is fatally "generic."  *Reps. Comm.*, 3 F.4th at 370.  The SEC does not indicate that the recording specifically reveals anything different from what is already well known about Musk's facial expressions, body language, and voice.  The SEC's declarations do not assert, for example, that Musk became emotional or distressed when discussing an intimate or sensitive subject.  Nor do they indicate that there is something distinct or embarrassing about how Musk appears or comports himself in this interview as opposed to how he comports himself in the over one hundred interviews in the public domain, many of which involve probing questions.  *See Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 978 F. Supp. 2d 1, 10 (D.D.C. 2013) ("His privacy interest in [data] already known to the public is substantially diminished, all the more so because he was the person responsible for disclosing it.").  To the contrary, Musk has answered many of the same questions in publicly available interviews and has publicly discussed the same subjects at length.  *See* Pl.'s Mem. at 33–35 (documenting examples).  Although the SEC's concerns are real in the abstract, the foreseeable harm "inquiry is context specific" and generalizations do not suffice.  *Reps. Comm.*, 3 F.4th at 370.

The SEC next argues that the recording could be manipulated to create deepfakes of Elon Musk.  *See* Def.'s Mem. at 9; *see also* Tallarico Decl. ¶ 16; Decl. of Jake Nocon ¶¶ 11, 16 ECF No. 22-1 ("I am aware that Mr. Musk, as a public figure, has been the subject of 'deep fakes' and

other malicious online postings using his image and voice."). But the SEC cites several articles noting that Musk is already a frequent target of deepfakes, *see* Tallarico Decl. ¶ 16, in part "*because of* the amount of interviews he's done." *See* Brian New et al., *Deepfakes of Elon Musk Are Contributing to Billions of Dollars in Fraud Losses in the U.S.*, CBS NEWS (Nov. 24, 2024), https://www.cbsnews.com/texas/news/deepfakes-ai-fraud-elon-musk/ (emphasis added). It is speculative to assert that the release of a single additional video of Musk *would*—not merely *could*—lead to more Musk deepfakes than would otherwise exist in a way that would "actually impede" Musk's privacy interests. *Leopold*, 94 F.4th at 37 (quoting *Reps. Comm.*, 3 F.4th at 370); *see also Reps. Comm.*, 3 F.4th at 369. In any event, the privacy interest in avoiding the release of one more video—given the public existence of at least a hundred others—would be *de minimis*.

## IV.    CONCLUSION

The SEC has not identified any substantial privacy interest that would be foreseeably harmed by the recording's release, and nowhere in its briefing did the SEC request another opportunity to supplement its declarations if the court were to find them inadequate. Consequently, it was improper for the agency to withhold the information under Exemptions 6 and 7(C),[2] and the court will order the SEC to release, within 60 days, the portions of the recording that correspond to the unredacted portions of the written transcript. *See* 5 U.S.C. § 552(a)(4)(B). The SEC may redact any portions of the recording that contain video or audio of any person other than Musk. A separate order will follow.

---

[2] Because the SEC failed to identify any substantial privacy interest that would be foreseeably harmed by the recording's disclosure, the court need not consider whether there is a public interest in release, nor whether the SEC failed to comply with its segregability obligations.

Date: March 23, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge